FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

NOV 21 2005

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THE PARADIES SHOPS, INC.,

        Plaintiff,

v.

FIRST AMERICAN COMMERCIAL
BANCORP, INC.,

        Defendant.

CIVIL ACTION NO.

1:05-CV-00490-JEC

## ORDER

This case is before the Court on a series of motions by both parties. The underlying dispute concerns the interpretation of a series of equipment leasing contracts that the parties entered into over a period of time. The collateral dispute that has stalled the litigation concerns defendant's contention that the parties entered into a binding agreement to arbitrate these contractual disputes, albeit plaintiff never signed such an agreement and albeit plaintiff disputes that it ever agreed to arbitration.

**I.   Defendant's Motion to Stay Litigation [6] and to Stay Discovery [19]**

This case was filed on February 22, 2005, and assigned to the Honorable Willis B. Hunt. On May 20, 2005, Judge Hunt recused and this case was thereafter reassigned to the undersigned. Prior to

AO 72A
(Rev.8/82)

this reassignment, several motions by the parties had been filed. These motions relate to two general themes: (1) defendant's contention that the plaintiff had agreed to arbitrate this agreement, and plaintiff's denial that it had done so, and (2) plaintiff's efforts to move forward with discovery in advance of a resolution of defendant's contention that there is a binding agreement to arbitrate.

As noted, this case involves a complex commercial dispute over equipment leasing contracts. The parties are contentious and their pleadings are expansive, not only as to the underlying dispute, but also as to the collateral dispute now before the Court. Defendant argues that if the Court forces it to proceed with discovery, in advance of a resolution of its claim that plaintiff has agreed to arbitrate these disputes, defendant will be irreparably prejudiced, as such discovery will likely be more cumbersome and expensive than would discovery ordered by an arbitrator. Plaintiff argues, among other things, that defendant's contention that plaintiff had agreed to arbitrate is without merit, as plaintiff never signed any such agreement and as plaintiff's counsel never intended to bind her client to arbitration, during a telephone conversation with defense counsel.

Upon its review of the pleadings and supporting documents, the Court finds defendant's position regarding the existence of an

2

arbitration agreement to be unpersuasive. Here, the underlying contracts at issue do not contain an arbitration agreement; thus, clearly defendant did not enter into the equipment leases with any expectation that disputes would be arbitrated. Instead, the possibility of arbitration only arose as a part of lengthy settlement discussions between the parties, extending over a six-month period.

Moreover, defendant concedes that plaintiff never signed an arbitration agreement. Nevertheless, defendant argues that plaintiff agreed to arbitration because plaintiff's counsel allegedly so agreed during a telephone conversation between counsel, which conversation occurred after four months of protracted negotiations concerning the terms of such an agreement.  It is this alleged oral agreement by plaintiff's counsel on which defendant pegs its argument that a binding arbitration agreement exists between the parties.

Specifically, defendant acknowledges that counsel for both parties had been involved in lengthy negotiations concerning the terms of an agreement to arbitrate their disputes, between October 2004-February 2005.  According to the declarations of both counsel, there was much back-and-forth between the lawyers, with the usual strike-outs and addition of language to drafts that these attorneys would then re-circulate to each other.  According to defendant, its attorney, Kevin A. Russell, ultimately "believed" that on February 10, 2005, during a telephone conversation, he and counsel for the

3

plaintiff, Alison P. Danaceau, had finally reached agreement on all material terms.  (Defs. Mot. to Stay [6] at 6-7).  Mr. Russell e-mailed to Ms. Danaceau a draft reflecting the language that he believed he and she had agreed to by telephone, for her and her client to sign.  Several days passed, however, and, contrary to defense counsel's expectations, plaintiff's counsel never returned a signed copy of the last iteration of the arbitration agreement that defense counsel had discussed with her.  Instead, several days later, plaintiff's counsel e-mailed Mr. Russell that the plaintiff "could no longer agree to arbitration" and filed suit in this Court.  *Id.*

It is the position of plaintiff that Ms. Danaceau indicated in her last conversation with Mr. Russell that she had to check with her client before she could formally assent to the proposed arbitration agreement.  (Affidavit of Allison Danaceau [11] at Exh. 2). According to defendant, however, Mr. Russell "flatly denies that [Ms. Danaceau] conditioned her assent to the Arbitration Agreement in any way."  (Defs.' Reply Mem. in Supp. of Defs.' Mot. to Stay [17] at 1). Moreover, Ms. Danaceau has an even more fundamental disagreement with Mr. Russell's characterization of their conversations, as she had previously indicated to Mr. Russell that any arbitration would be narrow and would govern only specified contracts (Schedules 1 and 2), and not a new dispute that had arisen between the parties concerning six other equipment lease contracts.  (Affidavit of Allison Danaceau

4

[11] at Exh. 2, ¶¶ 9, 18).

In short, the parties dispute not only whether they orally agreed to arbitrate, but they also dispute the terms of any such putative agreement. Leaving aside which attorney said what in these conversations--and the inability of any court to accurately and efficiently unravel such conversations--this Court finds persuasive plaintiff's argument that one cannot infer the existence of a binding agreement to arbitrate on the murky and disputed circumstances that exist here.

First, defendant's contention that plaintiff agreed to the purported arbitration agreement is greatly undermined by the fact that neither plaintiff nor its counsel ever signed such an agreement. Typically, in a complex and contentious business dispute between sophisticated corporations, a party manifests its assent to a particular agreement by signing that agreement. No signature usually means no agreement.

Indeed, defendant acknowledges that the Federal Arbitration Act requires that an agreement to arbitrate can be enforced only if it is in writing. 9 U.S.C. § 3. Here, defendant's proposed draft, which defendant hoped would become the final draft, was in writing, but plaintiff never accepted *in writing* this agreement. Defendant acknowledges this, but contends that Georgia law does not require that an agreement to arbitrate be signed by a party in order to be

5

enforceable.    The Georgia case cited by defendant--*Comvest v. Corporate Sec. Group, Inc.,* 234 Ga. App. 277 (1998)--is, however, distinguishable from this case.    In *Comvest*, the plaintiff was a sophisticated, institutional investor that purchased securities through the defendant broker.    The defendant broker required its customers to sign agreements to arbitrate as a condition of doing business with the broker: a fact that plaintiff, a sophisticated investor, would have known.    Plaintiff never returned the form and defendant sent plaintiff another arbitration agreement form to sign. Plaintiff still did not return that form and, over a year after retaining the securities that it bought from defendant, plaintiff filed suit for fraud.

The Georgia Court of Appeals held that the plaintiff was required to arbitrate the dispute, notwithstanding the fact that the plaintiff had never returned a signed copy of the arbitration agreement form.    The court noted that a party may be bound by an agreement to arbitrate, even in the absence of his signature, "where [the party's] assent is otherwise indicated, such as *by the acceptance of benefits under the contract, or the acceptance by one of the performance by the other*." 234 Ga. App. at 280-1 (emphasis added)(internal citation and quotation omitted); *accord Marett v. Brice Bldg. Co., Inc.* 268 Ga. App. 778 (2004) (holding that party was bound to a guaranty agreement that it did not sign, but orally agreed

6

to, where the party worked with the opposing part for several months and enjoyed the benefits of the contractual relationship).

Accordingly, analyzing the case cited by defendant, Georgia law calls for the enforcement of an unsigned arbitration agreement when one could clearly infer that the non-signing party was aware that an agreement to arbitrate was a precondition to the particular business venture being contracted and when the party accepted and enjoyed the benefits of the contractual relationship, albeit the party neglected to ever return a signed arbitration agreement. In other words, Georgia courts will presumably enforce an unsigned arbitration agreement only when principles of promissory estoppel so require.

Here, defendant did not rely to its detriment on any oral promise by plaintiff's counsel to arbitrate the underlying disputes. As noted, the underlying contracts contained no agreement to arbitrate. Moreover, while defendant may have been disappointed that plaintiff did not ultimately sign the agreement to which defense counsel thought plaintiff had acceded during a telephone conversation, defendant did not rely to its detriment on plaintiff's purported assent to this agreement. Within a matter of days, plaintiff communicated to the defendant that there would be no arbitration: an outcome that must have always been foreseeable to defendant, given the protracted and uncertain four month negotiation over this very topic.

7

Even assuming that defendant could hold plaintiff to an unsigned arbitration agreement, the Court cannot find that plaintiff and defendant ever came to a meeting of the minds on all material terms, as is always required to find the existence of an enforceable agreement. The terms under negotiation were constantly changing during the lengthy period of negotiation, and the understanding of each attorney is impossible to decipher.[1]

For all the above reasons, the Court **DENIES** defendant's Motion

---

[1]   Defendant's argument, and the inquiry that it would necessarily entail, would turn the purpose behind arbitration on its head. Arbitration is intended to allow the parties to more quickly, cheaply, and informally resolve disputes. Defendant argues, however, that, as a general matter, a court can enforce an arbitration agreement that has never been signed by one of the parties, based merely on a representation that the party had orally agreed to the arbitration. Yet, to make that determination in this case, or in any case, this Court would have to consider all e-mails and other written communications between the parties. Indeed, the current file is full of those documents. The Court would then have to deconstruct all the oral conversations between the parties and counsel to determine whether there had actually been a meeting of the minds. Those conversations have likewise been presented to the Court by both sides, in the tedious detail one would expect for such summaries. Eventually, the Court might have to convene a hearing at which testimony concerning all negotiations would be presented. Defendant has requested a hearing in this case on this very subject. Finally, where as here, there is a dispute about the scope of the purported arbitration agreement, the Court would have to become totally conversant in the merits of the underlying litigation in order to understand the context of the parties' negotiations.

In short, defendant's position would routinely create situations where the litigation concerning whether there was an oral agreement to arbitrate could dwarf, in scope and expense, the underlying dispute, itself. There is a reason that the FAA requires that all arbitration agreements be in writing. Avoidance of the above-described scenario is presumably one of those reasons.

to Stay Litigation [6] and Motion to Stay Discovery [19].  The Court

further **DENIES AS MOOT** defendant's Motion For Protective Order [29]

and **GRANTS** plaintiff's Motions to Compel [30, 39].  Defendant shall

provide the discovery that is the subject of these motions to compel

within **THIRTY (30)** days of this Order.  The Court also **GRANTS**

plaintiff's Motion to Compel Deposition [54].  The timing of the

deposition of defendant's Rule 30(b)(6) witness shall be determined

by the parties during the regular period of discovery.  Finally, the

parties shall submit a proposed scheduling order by **Friday, December**

**2, 2005,** indicating the length of discovery requested and any other

scheduling matters that might properly be the subject of a Court

order.

## II.  Plaintiff's Motion For Preliminary Injunction [40]

Plaintiff has filed a Motion for Preliminary Injunction [40]

requesting that the Court grant plaintiff the ultimate relief that it

would receive if it prevailed on the litigation: that is, to hold

that the FMV Purchase Option Addendum applies to Equipment Schedule

Nos. 8014.  Alternatively, plaintiff asks the Court to extend the

deadline for plaintiff to provide notice of its election to terminate

one of these schedule, Schedule No.8, until the Court decides the

merits of the litigation.  Defendant objects.

Upon review of the pleadings provided by both parties, this

9

Court concludes that plaintiff has not shown a substantial likelihood of success on the merits, nor has plaintiff shown the existence of irreparable harm should the injunction be denied.  Accordingly, the Court **DENIES** plaintiff's Motion for Preliminary Injunction [40].

The Court also **DENIES without Prejudice** plaintiff's Motion for Partial Summary Judgment [64].  This motion may be refiled at the conclusion of discovery.  The Court also **DENIES as Moot** plaintiff's Motion to Strike Evidence [78] and **DENIES** plaintiff's Motion to Strike Answer [77].

### III. Conclusion

For all the above reasons, the Court **DENIES** defendant's Motion to Stay regarding Complaint [6] and Motion to Stay Discovery [19]. The Court further **DENIES AS MOOT** defendant's Motion For Protective Order [29] and **GRANTS** plaintiff's Motions to Compel [30, 39]. Defendant shall provide the discovery that is the subject of these motions to compel within **THIRTY (30)** days of this Order.  The Court also **GRANTS** plaintiff's Motion to Compel Deposition [54].  The parties shall submit a proposed scheduling order by **Friday, December 2, 2005,** indicating the length of discovery requested and any other scheduling matters that might properly be the subject of a Court order.

Finally, the Court **DENIES** plaintiff's Motion for Preliminary

10

Injunction [40] and **DENIES without Prejudice** plaintiff's Motion for Partial Summary Judgment [64].   The Court also **DENIES as Moot** plaintiff's Motion to Strike Evidence [78] and **DENIES** plaintiff's Motion to Strike Answer [77].

SO ORDERED, this 21 day of November, 2005.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

11